# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

WILLIE JUNIOR LEE                                                                                            PLAINTIFF

V.                                          4:08CV000091 JLH/JTR

CHRIS SCHMECKENBECHER, et al.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Room 149
>   Little Rock, AR 72201-3325

## I. Background

In this § 1983 action, Plaintiff, Willie Junior Lee, alleges that Defendant, Chris Schmeckenbecher, a deputy with the Pulaski County Sheriff's Office, provided him with inadequate medical care for injuries he received in an altercation with another man on November 26, 2005.[1] (Docket entry #2.) According to Plaintiff, after this altercation, he called 911 and reported that he had been struck on the head with a brick. The operator told him to be on the lookout for a deputy with the Pulaski County Sheriff's Office.

When Defendant arrived at the scene, Plaintiff alleges that he ordered him to get on the ground and then handcuffed him. According to Plaintiff, paramedics arrived and told Defendant that

---

[1] Plaintiff named John Doe Defendants identified only as "Pulaski County Sheriff Intake Officers." He later moved to voluntarily dismiss the John Doe Defendants (docket entry #17), and, on June 11, 2008, United States District Judge J. Leon Holmes entered an Order dismissing those Defendants, without prejudice. (Docket entry #18.)

Plaintiff needed to go to the hospital because his head was hurt "too bad" for bandages to stop the bleeding. *Id.* Defendant allegedly told the paramedics that they were not going to take him to the hospital, because "we're taking him to jail." *Id.*

Plaintiff alleges that, while he was in a holding cell at the Pulaski County Detention Facility ("PCDF"), he almost passed out from blood loss. A deputy looked in on him and said "you all cannot do him [Plaintiff] like that." *Id.* A nurse then responded, rebandaged his head and drew a circle on the bandage to monitor the bleeding. *Id.*

Based on these allegations, Plaintiff claims that Defendant denied him adequate medical care, as required by the Fourteenth Amendment.[2] By way of relief, Plaintiff seeks $2 million in damages. *See* docket entry #14.

Defendant has filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Material Facts. (Docket entries #20, #21, and #22.) Plaintiff has filed two Responses. (Docket entries #25 and #28.) For the reasons discussed below, the Court recommends that Defendant's Motion be granted, and that this action be dismissed with prejudice.

## II. Discussion

To establish an inadequate medical care claim, a pretrial detainee must show that: (1) he had an objectively serious medical need; and (2) jail officials actually knew of and deliberately disregarded that serious medical need. *See Estelle v. Gamble*, 429 U.S. 97 (1976). For purposes of

---

[2]Plaintiff's inadequate medical care claim is analyzed under the Fourteenth Amendment's Due Process Clause, instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, because he was a pretrial detainee at the time he was arrested and booked at the PCDF. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Eighth Circuit has applied the same deliberate indifference standard to inadequate medical care claims brought under both the Fourteenth and Eighth Amendment. *See Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993).

this Recommended Disposition, the Court assumes that Plaintiff's head laceration was an objectively serious medical need. In Defendant's Motion for Summary Judgment and supporting papers, he argues that Plaintiff cannot show that Defendant knew and deliberately disregarded Plaintiff's serious medical need.

The Eighth Circuit has explained that deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998). Additionally, it is well settled that negligence or even gross negligence in making treatment decisions are insufficient to establish a constitutional violation. Likewise, a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Finally, a delay in medical treatment is actionable only if a prisoner presents "verifying medical evidence" that the defendants "ignored an acute or escalating situation or that the delays adversely affected his prognosis."[3] *See Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995).

According to Defendant's affidavit, he and another deputy responded to repeated 911 calls reporting that a man inside a house was threatening his family with a knife. (Docket entry #22, Schmeckenbecher Aff. at ¶¶ 1-2.) When Defendant and his partner arrived at the residence, family members were holding the door to prevent Plaintiff from exiting. (Docket entry #22,

---

[3] In other words, "[a]n inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997).

Schmeckenbecher Aff. at ¶7.) According to their incident reports, Defendant and his partner believed that Plaintiff was the one threatening others inside the house. (Docket entry #22, Schmeckenbecher Aff. at ¶9.) Plaintiff came out, and Defendant ordered him to the ground and handcuffed him.[4] (Docket entry #22, Schmeckenbecher Aff. at ¶10.)

Defendant saw that Plaintiff was bleeding from the head, and Metropolitan Emergency Medical Services ("MEMS") paramedics came to the scene, treated Plaintiff, and bandaged his head. (Docket entry #22, Schmeckenbecher Aff. at ¶¶13-15.) Defendant did *not* recall MEMS personnel telling him that Plaintiff needed to be taken to the hospital, and, if they had made such a recommendation, he would have followed it. (Docket entry #22, Schmeckenbecher Aff. at ¶¶ 17-18.) According to Defendant, it was "not obvious" that Plaintiff needed any additional treatment other than what was provided by MEMS and what was available at PCDF. (Docket entry #22, Schmeckenbecher Aff. at ¶20.) Furthermore, Defendant was aware of the medical screening policy at PCDF. According to that policy, if a detainee was in need of emergency medical care when he arrived at the facility, he was taken immediately to the hospital. (Docket entry #22, Schmeckenbecher Aff. at ¶21.) In his Affidavit, Defendant states that Plaintiff was medically screened and admitted into PCDF, and he was not instructed to transport Plaintiff to the hospital. (Docket entry #22, Schmeckenbecher Aff. at ¶¶ 22-23.)

Sarah Speer, a registered nurse and the PCDF Health Services Administrator, stated in her Affidavit that a detainee is medically screened upon booking at PCDF. (Docket entry #22, Speer Aff. at ¶4.) PCDF policy prohibits a detainee from being admitted into the jail if emergency medical

---

[4]Defendant discovered a knife on the ground where Plaintiff had been lying. Plaintiff was then arrested and charged with aggravated assault on a family member. (Docket entry #22, Schmeckenbecher Aff. at ¶¶11-12.)

care is necessary, and the arresting officer is required to take the detainee to the hospital for evaluation and treatment. *Id.*

Plaintiff was booked into PCDF on November 26, 2005, and was seen by an EMT and a nurse. (Docket entry #22, Speer Aff. at ¶¶3, 5.) Plaintiff's PCDF Intake Medical History and Screening Form notes that he had a laceration to the forehead, and that he was "treated by MEMS on scene after incident last night - lacs do not appear to need suture." (Docket entry #22, Ex. B-1 to Speer Aff.) After being admitted into PCDF, Plaintiff was seen by nurses on November 26, 27, and 28. (Docket entry #22, Speer Aff. at ¶¶8-9.) A progress note, dated November 27, states that Plaintiff was lying on the injured side of his head and "it began to bleed profusely." (Docket entry #22, Ex. B-1 to Speer Aff.) A few days later, Plaintiff was released from PCDF. (Docket entry #22, Speer Aff. at ¶10.)

On August 11, 2006, Plaintiff was arrested on new charges and taken to PCDF. While there, he filled out a sick call form complaining of the November, 2005 head injury. (Docket entry #22, Speer Aff. at ¶11.) On the sick call form, Plaintiff wrote that "I explain[ed] to doctors on the outside but all they gave me is pain pills and they say the pain is likely from high blood pressure." (Docket entry #22, Ex. B-2 to Speer Aff.)

In his Responses, Plaintiff contends that MEMS personnel "told deputies" that his injury needed hospital treatment because the bandages would not stop the bleeding.[5] (Docket entry #28 at

---

[5]Plaintiff's first Response (docket entry #25), a one-paragraph handwritten document, was filed one day after the Court entered an Order which instructed Plaintiff to: (a) file a Response and a Statement of Disputed Material Facts; and (b) include evidence, consisting of affidavits or other documents, supporting the facts set forth in the Statement of Disputed Material Facts. (Docket entry #23.) Because Plaintiff prepared his first Response without the benefit of the Court's Order, it directed Plaintiff to file a second Response and Statement of Disputed Material Facts that complied with the Court's instructions. (Docket entry #26.) Plaintiff's second Response is a two-page typed

1.) Plaintiff claims that Defendant told the MEMS personnel that they were taking him to jail. *Id.* at 2. According to Plaintiff, he was left to bleed to death for hours at the jail. According to Plaintiff, when he was finally seen by a doctor at the PCDF, he cleaned Plaintiff's wound, but said that the "injury was infected and too late for stitches." *Id.*

Although he has been given the opportunity to do so, Plaintiff has failed to come forward with *any evidence* to substantiate his claim that Defendant provided him with inadequate medical care. Furthermore, none of the medical evidence supports Plaintiff's version of the facts. Finally, in his Affidavit, Defendant states that: (a) Plaintiff did not appear to require medical attention beyond that which was provided by MEMS; and (b) he knew that Plaintiff would be medically screened at PCDF to determine if he required any further emergency medical care. That screening took place, and PCDF medical personnel did *not* find that Plaintiff needed any emergency medical care.[6] Nothing in Plaintiff's Response controverts any of these facts.

At most, Plaintiff's response establishes only that he had a disagreement with medical personnel regarding the treatment he received for his head injury. Finally, there is no evidence that Defendant played any role in making the medical decisions regarding the treatment Plaintiff received from MEMS personnel or the medical staff at the PCDF. Thus, as a matter of law, Plaintiff has failed to state a cognizable § 1983 claim against Defendant for allegedly providing him with inadequate medical care.

---

document. (Docket entry #28.)

[6]The jail screening record reflects that Plaintiff was treated by MEMS personnel on the scene and that Plaintiff's laceration did *not* appear to need a suture.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant's Motion for Summary Judgment (docket entry #20) be GRANTED, and the case be DISMISSED, WITH PREJUDICE.

Dated this 25th day of September, 2008.

_____
UNITED STATES MAGISTRATE JUDGE